Filed 10/6/22  P. v. Mora CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B313078 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA153005) |
| v. | |
| SERGIO MORA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Sean D. Coen, Judge.  Affirmed.

Olivia Meme, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Rama R. Maline, Deputy Attorneys General, for Plaintiff and Respondent.

—————————————

Following a jury trial appellant Sergio Mora was convicted of first degree burglary and of making criminal threats. He was sentenced to 18 years 4 months in state prison, and was ordered to pay $440 in fines and court fees. On appeal, Mora contends that the court erred in (1) not holding an evidentiary hearing to address alleged misconduct of a juror; (2) not granting the prosecution's (unopposed) *Romero*[1] motion to dismiss a prior strike; (3) ordering him to pay the fines and court fees without first holding a hearing to determine his ability to pay those sums; and (4) sentencing him to a prison term so disproportionate to his offense as to violate the California Constitution's prohibition of cruel or unusual punishment. We reject each of these contentions for the reasons explained below. In a supplemental brief, Mora raises the additional contention that his sentence to the high term on his burglary conviction violates Penal Code[2] section 1170, subdivision (b)(2) (as amended by Stats. 2021, ch. 731, § 1.3), effective January 1, 2022. That amendment requires sentencing courts to select the middle term unless aggravating factors existed and were stipulated to by the defendant or proved beyond a reasonable doubt at trial or proven by a certified record of conviction. We conclude there was no such error and, even if the trial court erred in finding aggravating factors that justified selecting the upper term of sentence, any such error was harmless. We thus affirm.

_____

[1] *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*).

[2] Subsequent unspecified statutory references are to the Penal Code, unless otherwise stated.

## FACTUAL AND PROCEDURAL BACK GROUND

On the morning of October 27, 2020, Danielle Alvarado[3] was getting ready for work when Mora knocked on the front door and asked for someone who did not live there. Danielle informed Mora that he was at the wrong address and closed the door. Mora persisted, repeatedly knocking on and then kicking the door. Danielle eventually awakened Joseph and asked him to watch her while she walked to her car because Mora "seemed out of his right mind." Joseph also tried to persuade Mora that he was at the wrong house, but Mora responded that Joseph was the man who had shot and killed Mora's brother, and that Mora only wanted "to do [drugs]" with Danielle and Joseph. Mora followed Danielle to her parked car, all the while accusing her of harboring his personal property and telling her that he was not afraid of the police and that he would not allow her to leave in her car. Joseph accompanied Danielle when he realized Mora was following her. Mora spoke to Joseph as well, accusing him of having killed Mora's brother. When they reached Danielle's car Mora tried to grab her hand or arm, causing Danielle to drop her phone. Joseph pushed Mora away while Danielle retrieved her phone and announced she was calling the police. At that point Mora ran off and Danielle drove away.

Mora turned back to Danielle's and Joseph's residence, followed by Joseph. When Joseph arrived home he found Mora in the living room, holding a pair of sneakers he had taken from a nearby closet. Joseph took the shoes away and physically

---

[3] Danielle and her roommate Joseph have the same last name. For ease of reference, we refer to them by their first names.

removed Mora from the apartment. While Joseph waited for the police to arrive, Mora stood outside yelling at Joseph, including a threat to kill Joseph. Mora then left the property, returned, knocked on the door, and left. Mora returned again, this time holding a baseball bat, and again tried to get in through the front door. Mora left and had returned yet again, still carrying the bat, when the police arrived. Although he had dropped the bat by the time he was taken into custody, one of the responding officers found the baseball bat a few houses away.

Mora was charged in an information with one count of first degree burglary and one count of criminal threats, accompanied by an enhancement arising from use of a dangerous weapon—the baseball bat. The information further charged Mora with two prior serious felonies, murder and robbery. The enhancement for use of the baseball bat was dismissed at Mora's preliminary hearing, but he was convicted at trial on both the burglary and criminal threat counts. Mora waived a jury trial at his sentencing. The court disregarded a prior strike for a murder that occurred in 1992, when Mora was approximately 15 years old but found as true a prior strike arising from his 2012 conviction for robbery. The court sentenced Mora, who was 44 years old at the time of sentencing, to the upper term of imprisonment for his burglary conviction, citing Mora's criminal record, his recent convictions for increasingly violent crimes, and the fact that Mora was on probation in three separate matters when the burglary occurred.[4]

---

[4] Mora's sentence, before credits for time served, amounted to 18 years 4 months in state prison, calculated as follows: for burglary, six years in state prison, doubled to 12 years pursuant to sections 667, subdivisions (b) to (i) and 1170.12, subdivisions

Finally, the court imposed $440 in fines and court fees, consisting of a restitution fine of $300, a court operations assessment of $80, and $30 conviction assessment fees imposed for each of the two counts on which Mora was convicted. In response, defense counsel inquired whether the court would "consider waiving or staying the court fees based on Mr. Mora being indigent and his sentence." The court responded in the negative: "It is premature for me to do that at this time as it cuts both ways as with the length of the sentence because [Mora] will have earning capacity within state prison."

## DISCUSSION

We have jurisdiction to review Mora's challenges to the judgment. (§ 1237, subd. (a).)

### A. The Trial Court Committed No Error Regarding Purported Juror Misconduct

Mora's first contention on appeal is that a juror committed misconduct, that the trial court failed to address the misconduct when it was brought to the court's attention, and that the presumption of prejudice from the juror's misconduct entitles Mora to a new trial. We review for abuse of discretion the trial court's decision not to conduct a hearing or detailed inquiry. (*People v. Ray* (1996) 13 Cal.4th 313, 343; *People v. Keenan* (1988) 46 Cal.3d 478, 539.)

The juror misconduct claim is based on a note sent by the jury foreman on the morning the jury reached its verdict. The

---

(a) to (d); for criminal threats, eight months in state prison, doubled to 16 months pursuant to sections 667, subdivisions (b) to (i) and 1170.12, subdivisions (a) to (d); plus an additional five years in state prison pursuant to section 667, subdivision (a)(1).

5

note, received at 9:45 a.m., read in its entirety: "If a member of the jury is not considering all of the elements of the case to determine if the defendant is guilty or not guilty." After conferring with counsel, and without objection by Mora's counsel, the court replied in writing that "[a]ll jurors must weigh and consider all elements and evidence in making a determination on whether the defendant is guilty or not guilty." Approximately half an hour after the jury resumed deliberating, it informed the court it had reached a verdict.

Mora now contends that the juror's note put the court on notice of misconduct warranting dismissal of the juror in question, and that it was error not to have held an evidentiary hearing before determining how to respond. Before addressing these contentions, however, we consider whether they have been waived by defense counsel's failure to make any objection at the time the court consulted counsel on how to respond to the jury note. We conclude that Mora waived his challenges based on the jury note.

Even a constitutional right " ' "may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it." ' " (*In re Sheena K* (2007) 40 Cal.4th 875, 880-881.) In the absence of a requirement that a timely objection be made, the prosecutor would be deprived " 'of the opportunity to cure the defect at trial,' " while the defendant could " ' "gamble on an acquittal at his trial secure in the knowledge that a conviction would be reversed on appeal." ' " (*People v. Partida* (2005) 37 Cal.4th 428, 434.) Our cases make it clear that a claim of juror misconduct is waived in the absence of a timely objection. (*People v. Stanley* (2006) 39 Cal.4th 913, 950 [issue of juror misconduct is waived on

appeal when defense failed to object at trial or seek a mistrial on grounds of juror misconduct]; *People v. Wisely* (1990) 224 Cal.App.3d 939, 948 [waiver when, rather than object, defendant "fully acquiesced in the proceedings"].)

We also reject Mora's contention on its merits. "Juror misconduct" is a broad concept and can include a juror undertaking "experiments" on his own (*Bell v. State of California* (1998) 63 Cal.App.4th 919, 932), a juror being intoxicated (*People v. Burgener* (1986) 41 Cal.3d 505, 516-517, disapproved on another ground in *People v. Reyes* (1998) 19 Cal.4th 743, 746), jurors discussing among themselves the defendant's failure to testify (*People v. Lavender* (2014) 60 Cal.4th 679, 687), a juror sleeping during trial (*People v. Bradford* (1997) 15 Cal.4th 1229, 1347-1348), or a juror expressing an opinion as to the defendant's guilt prior to deliberations (*People v. Weatherton* (2014) 59 Cal.4th 589, 598).

Just as "juror misconduct" describes a broad range of circumstances, the trial court has broad discretion to address reports of potential juror misconduct. That discretion extends to determining whether misconduct has occurred, as well as how best to respond to a report of misconduct. "The court does not abuse its discretion simply because it fails to investigate any and all new information obtained about a juror during trial." (*People v. Ray* (1996) 13 Cal.4th 313, 343.)

Contrary to Mora's contention, " 'a hearing is required only where the court possesses information which, if proven to be true, would constitute "good cause" to doubt a juror's ability to perform his duties and would justify his removal from the case.' " (*People v. Cleveland* (2001) 25 Cal.4th 466, 478; accord, *People v. Ray*, *supra*, 13 Cal.4th at p. 343 [same].) "The trial court's authority to

7

discharge a juror includes the authority to conduct an appropriate investigation concerning whether there is good cause to do so, and the authority to take 'less drastic steps [than discharg(ing a juror)] where appropriate to deter any misconduct or misunderstanding it has reason to suspect.' " (*People v. Alexander* (2010) 49 Cal.4th 846, 926, quoting *People v. Keenan, supra*, 46 Cal.3d at p. 533.)

Far from showing cause to dismiss a juror, the note at issue in this case can be read as simply revealing that the juror in question misunderstood the court's instruction regarding the elements of one of the offenses for which defendant was tried. On the facts presented here, the court's response was correct, "to reinstruct the jurors regarding their duty to deliberate and to permit the jury to continue deliberations before making further inquiries that could intrude upon the sanctity of deliberations." (*People v. Cleveland, supra*, 25 Cal.4th at p. 480.) Only "when reinstruction does not resolve the problem" need the court conduct whatever inquiry is reasonably necessary to determine whether grounds exist to dismiss a juror. (*Ibid.*) Here, the record confirms that reinstruction did resolve whatever problem there was, as the jury returned with a verdict less than half an hour after the court's instruction that all jurors must "weigh and consider all elements and evidence" in reaching a verdict.

## B. **The Trial Court Did Not Err in Failing to Hold a Hearing on Mora's Ability to Pay**

Mora's second contention on appeal is that the trial court erred by imposing the restitution fine and court fees without regard to his ability to pay those sums. Citing *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), Mora contends that he was

8

entitled to a hearing as to his ability to pay before the court could impose the fine and fees.[5]

In *Dueñas*, Division Seven of this court held that it was error to impose certain fees and assessments as part of a criminal conviction without holding a hearing at which the defendant could attempt to prove her inability to pay. We begin our review of this contention by determining whether counsel preserved it for appeal by making a timely and complete objection at trial. We note that, while defense counsel in *Dueñas* specifically requested a hearing to address the defendant's inability to pay, and offered proof of her indigence, counsel here did neither. We also note that the opinion in *Dueñas* was published in January 2019, approximately two and one-half years before Mora was sentenced. Mora's sentencing memorandum did not address the issue of fines and assessments, and did not contend that Mora lacks the ability to pay fines that may be imposed.

We conclude Mora has waived his contention, first made on appeal, that the trial court erred in failing to hold a hearing on his inability to pay fines and fees. However, we treat counsel's request below that the court "consider waiving or staying the court fees" as a timely objection to the court's order imposing the restitution fine and court fees, and therefore address whether the court erred by refusing to waive those fees. We conclude that it did not.

---

[5] The California Supreme Court has granted review to consider the requirement to hold a hearing as to the defendant's ability to pay before ordering payment of restitution fines or court fees as part of the sentence in a criminal case. (*People v. Kopp* (2019) 38 Cal.App.5th 47, review granted Nov. 13, 2019, S257844.)

Mora's circumstances are very different from those of the defendant in *Dueñas*. The defendant in that case was a young, homeless woman who suffered from cerebral palsy and who relied on public assistance to support herself and her two children. Her driving privilege was repeatedly suspended for inability to pay fines and court fees, and each successive offense left her deeper in court-ordered debt that she had no ability to escape. Yet another traffic stop in 2015 resulted in the defendant pleading no contest to driving with a suspended license, after which she was sentenced to probation and ordered to pay a $150 restitution fine and $70 in court fees. Her counsel requested a hearing to determine her ability to pay these fees, but the court declined on the ground that it had no discretion to waive the fine or court fees. The Court of Appeal remanded for a hearing, holding that "due process of law requires the trial court to conduct an ability to pay hearing and ascertain a defendant's present ability to pay before" imposing court and administrative fees, and that it was "fundamentally unfair" to impose a restitution fine on those lacking the ability to pay it. (*Dueñas*, *supra*, 30 Cal.App.5th at p. 1164.)

In *People v. Caceres* (2019) 39 Cal.App.5th 917 (*Caceres*), we limited *Dueñas* to its "extreme facts" and to the unique circumstances of the defendant in that case. (*Caceres*, *supra*, at pp. 923, 926-927.) The defendant in *Caceres* contended that he was deprived of due process when the trial court assessed $370 in fines and court fees following his conviction for making criminal threats. Our opinion in *Caceres* addressed at length the factual differences between the defendants in *Dueñas* and in *Caceres*. Specifically, we concluded that while Ms. Dueñas's crime was inseparable from her poverty, in that she was trapped by "the

10

cascading consequences of . . . fines and assessments" (*Dueñas*, *supra*, 30 Cal.App.5th at p. 1163) that she could not afford to pay, and fell farther behind each time she was stopped for driving on the suspended license that she could not afford to reinstate, the defendant in *Caceres* had no such excuse. As we observed, "Caceres's offense, criminal threats, on its face is not a crime either 'driven by' poverty or likely to 'contribut[e] to' that poverty such that an offender is trapped in a 'cycle of repeated violations and escalating debt.' " (*Caceres*, *supra*, at p. 928, quoting *Dueñas*, *supra*, at p. 1164 & fn. 1.) To the contrary, "[a] person may avoid making criminal threats regardless of his or her financial circumstances, and the imposition of $370 in fees and fines will not impede Caceres's ability to avoid making criminal threats in the future." (*Caceres*, *supra*, at pp. 928-929.)

We believe the same distinction applies to Mora: any inability to pay the $440 in fines and assessments is not the result of Mora having committed the burglary at issue, and his obligation to pay those fees will not impede his ability to avoid committing future burglaries.

Based on *Caceres*, we conclude that the trial court did not err by refusing Mora's request to waive the restitution fine and court costs in question. We review the record to determine whether there is "evidence supporting an implied determination of ability to pay." (*People v. Hennessey* (1995) 37 Cal.App.4th 1830, 1837.) The trial court's conclusion that the waiver request was premature, due to Mora's earning capacity while incarcerated, finds approval in a number of cases. (See, e.g., *People v. Jones* (2019) 36 Cal.App.5th 1028, 1035 [the defendant sentenced to six years; $370 in fees and costs assessed; potential earnings during sentence "forecloses a meritorious inability to

11

pay argument"]; *People v. Johnson* (2019) 35 Cal.App.5th 134, 139 ["[t]he idea that [the defendant] cannot afford to pay $370 while serving an eight-year prison sentence is unsustainable"]; *People v. Hennessey*, *supra*, at p. 1837 ["ability to pay" includes potential earnings from prison job during sentence]; *People v. Frye* (1994) 21 Cal.App.4th 1483, 1487 ["[i]n the absence of objection by [the] defendant, the trial court could presume the fine would be paid out of [the] defendant's prison wages"].) Our holding that the trial court correctly took into account Mora's potential earnings while serving his sentence establishes that any error in failing to hold a hearing regarding his ability to pay—even though Mora neither requested a hearing nor made an offer of proof of inability to pay—was harmless.[6]

## C. The Trial Court Did Not Err In Denying the Prosecution's *Romero* Motion

Mora's third contention on appeal is that the trial court erred when it denied the prosecution's *Romero* motion to dismiss a prior strike for Mora's conviction for robbery in 2012. Mora and the People agree that we review this decision for abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 376.) The trial court denied the motion, citing Mora's lengthy criminal record and the fact that he was on probation for three separate matters at the time he committed the burglary: "I can take into consideration the fact that the strike prior was from 2012, but the story doesn't end there because there was no significant break—

---

[6] Mora did not assert an Eighth Amendment claim in connection with the restitution fine and court costs. Accordingly, we deem the issue waived and do not address it. (*Caceres*, *supra*, 39 Cal.App.5th at p. 923.)

12

there was no break period in lawlessness from that date up until the date of this crime.  [Mora] was constantly getting arrested and he was put on probation various times and then he violated the probation.  So based upon that, I cannot see how it would be in the interest of justice to strike the strike prior and I will not strike the strike prior."[7]

A trial court abuses its discretion in refusing to dismiss a prior strike only in limited circumstances, such as when it was not aware of its discretion to dismiss, where it considered impermissible factors in refusing to dismiss, or where the resulting sentence leads to " 'an "arbitrary, capricious or patently absurd" result.' " (*People v. Carmony*, *supra*, 33 Cal.4th at p. 375.)  None of these factors appears on this record.  The trial court was fully aware of its discretion to dismiss a strike.  In fact, the court did disregard Mora's conviction for murder dating back to 1992.  The factors that the court did emphasize; namely, Mora's lengthy criminal history and the fact that he was on probation for three offenses when he was arrested, comport with factors cases have recognized to be relevant to inform that discretion.  (See, e.g., *People v. Brugman* (2021) 62 Cal.App.5th 608, 640 [no abuse of discretion, citing the defendant's "continuous history of criminal conduct"]; *People v. Bernal* (2019) 42 Cal.App.5th 1160, 1170 [no abuse of discretion although refusal to strike two prior convictions resulted in sentence of 85 years to life]; *People v. Humphrey* (1997) 58 Cal.App.4th 809, 813

---

[7] This was the prosecution's second *Romero* motion directed to Mora's earlier strike from 2011.  Prior to trial, before a different judge, the prosecutor's oral *Romero* motion was denied as well.

[reversing dismissal of prior strike where the defendant "led a continuous life of crime after the prior"].) Thus, the decision not to strike the 2012 conviction was not "so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony*, *supra*, 33 Cal. 4th at p. 377.)

With respect to Mora's contention that the trial court should have found, as a mitigating factor in support of the *Romero* motion, that Mora was suffering from mental illness at the time of his crimes,[8] we have reviewed the record, find such a condition was not established by competent evidence, and find no abuse of discretion by the trial court.

The existence of a mitigating factor must be determined by examining the facts and circumstances of the case. (*People v. Regalado* (1980) 108 Cal.App.3d 531, 538.) Here, the trial court had no admissible evidence supporting Mora's counsel's contention that his mental condition amounted to a mitigating factor requiring the court to strike the prior. Both at trial and at his sentencing, Mora's counsel did not adduce any evidence at trial of mental illness or disease. Similarly, in her sentencing memorandum, Mora's trial counsel did not contend that evidence showed that mental illness caused Mora to commit the crimes he was convicted of, although counsel did suggest that Mora's "borderline intellectual functioning . . . could have played a role"

---

[8] We assume this contention is based on rule 4.423(b)(2) of the California Rules of Court, which includes among "Circumstances in mitigation" whether "the defendant was suffering from a mental or physical condition that significantly reduced culpability for the crime."

14

in his crimes, and requested that the trial court order mental health screening.[9]

Mora's opening brief on appeal summarizes the "evidence" of mental illness as including all of the following: the victim's testimony that Mora "[j]ust seemed out of his right mind" while committing the offense, defense counsel's request that Mora be referred for mental health screening, and what counsel argue are the jurors' perceptions of Mora as expressed in two notes to the trial judge, which we discuss below. This "evidence" does not justify setting aside the trial court's exercise of his discretion to deny the *Romero* motion. It falls far short of demonstrating that the trial judge's conclusion was "irrational or arbitrary" (*People v. Myers* (1999) 69 Cal.App.4th 305, 310) or one "that no reasonable person could agree with." (*People v. Carmony*, *supra*, 33 Cal.4th at p. 377.)

Statements made by Mora's counsel, whether in written briefs (*Muskan Food & Fuel, Inc. v. City of Fresno* (2021) 69 Cal.App.5th 372, 389-390) or oral argument (*People v. Superior Court (Crook)* (1978) 83 Cal.App.3d 335, 341) are not evidence. The testimony of the complaining witnesses is as consistent with Mora being under the influence of alcohol or drugs as with him being mentally ill.[10] In fact, at the sentencing hearing defense

---

[9] The trial court denied the request, stating that Mora was not "a good candidate."

[10] Danielle initially described Mora as acting "like he was obviously on drugs." Only after the court sustained counsel's objection to that testimony did Danielle describe Mora as "out of his right mind," a statement that drew no objection. Both Danielle and Joseph testified that Mora insisted they had drugs

counsel argued that the victims' testimony suggested that Mora was "under the influence or having something to that effect being present on the day of the incident," while acknowledging that the testimony was not sufficient to raise a defense of voluntary intoxication. The prosecutor's comments at the hearing on the issue of whether Mora's mental state supported striking his prior are also ambiguous at best, although he was clear that he was not aware of "any evidence of mental health issues."

We also find no merit in Mora's contention that the trial court should have considered the juror's notes as evidence of mental illness. The notes in question were sent together on the morning of the last day of deliberations. The first note read, "And if your mental state of mind has any bearing on intent as according to the courts opinion." After consulting with counsel, and without objection, the court responded in writing: "There are no instructions given as to mental state. Please refer to instruction 3.31 page 22."[11] The second note read, "If a clinical diagnosis is needed to deem someone's mental state as rational or irrational in order for the jury to consider it." With the concurrence of counsel, the court responded: "This evidence is not before you." Certainly, a fair reading of these notes is that at

in the apartment and that they should all consume drugs together.

[11] Instruction 3.31 reads as follows: "In the crimes charged in [c]ounts 1, and 2, there must exist a union or joint operation of act or conduct and a certain specific intent in the mind of the perpetrator. Unless this specific intent exists the crime to which it relates is not committed. [¶] The specific intent required is included in the definitions of the crimes set forth elsewhere in these instructions." (CALJIC No. 3.31.)

16

least one juror questioned whether Mora's mental state was a factor in his guilt, but that does not mean the trial court had to consider the notes as evidence of mental illness in deciding the *Romero* motion. Jurors are neither witnesses nor expert evaluators of mental health, and the two notes from the jury foreperson are not evidence (see Evid. Code, § 140). Moreover, Mora's counsel did not object to the trial court's resolution of the juror notes by advising them that "[t]his evidence is not before you," which is consistent with our perception of the record—there was no evidence of mental impairment. This further supports our conclusion that the trial court did not abuse its discretion.

**D.      Mora's Sentence Was Not Cruel or Unusual Punishment**

Mora next contends that his sentence violates the California Constitution's prohibition against cruel or unusual punishments in article I, section 17. We conclude that Mora's sentence does not violate the Constitution. We first address the People's contention that Mora waived this ground for appeal by failing to raise an objection at the sentencing hearing. While the People are correct that a constitutional challenge to the length of sentence may be waived if not addressed to the court at the time sentence is imposed, even under the People's authorities, we may, and will, address the constitutional issue, if for no other reason than to "forestall a subsequent claim of ineffectiveness of counsel." (*People v. Martin* (1995) 32 Cal.App.4th 656, 661, disapproved on other grounds in *People v. Deloza* (1998) 18 Cal.4th 485, 600, fn. 10; see *People v. Norman* (2003) 109 Cal.App.4th 221, 229; *People v. Kelley* (1997) 52 Cal.App.4th 568, 583; *People v. DeJesus* (1995) 38 Cal.App.4th 1, 27, citing *People v. Martin, supra*.)

17

The constitutionality of a sentence in an individual case is an issue that we review independently for legal error, deferring to the underlying factual findings made by the trial court in determining Mora's sentence. (*People v. Wilson* (2020) 56 Cal.App.5th 128, 166-167; *People v. Palafox* (2014) 231 Cal.App.4th 68, 82.) We also defer to the Legislature's power to determine what punishment is appropriate for crimes. "Reviewing courts . . . should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes, as well as to the discretion that trial courts possess in sentencing convicted criminals." (*Solem v. Helm* (1983) 463 U.S. 277, 290, fn. omitted.) As our Supreme Court observed in *People v. Carmony*, *supra*, 33 Cal.4th at page 378, "the three strikes law not only establishes a sentencing norm, it carefully circumscribes the trial court's power to depart from this norm . . . . In doing so, the law creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper." Reflecting that deference to the Legislature's power to define crimes and punishments, our cases hold that reducing a sentence "is a solemn power to be exercised sparingly only when, as a matter of law, the Constitution forbids what the sentencing law compels." (*People v. Mora* (1995) 39 Cal.App.4th 607, 616.)

In deciding whether a sentence is cruel or unusual, a reviewing court must determine whether the punishment "is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch* (1972) 8 Cal.3d 410, 424, fn. omitted.) *Lynch* established a three-prong test to determine constitutionality, but Mora expressly limits his challenge to the

18

first of the three prongs:[12] "the nature of the offense and/or the offender, with particular regard to the degree of danger both present to society."

Turning first to the nature of the offense, we are unable to minimize "the degree of danger" posed to society by first-degree burglary. Our Legislature has classified this crime as a "violent felony" (§ 667.5, subd. (c)(21)). Inherent in burglary is an invasion of the victim's dwelling, a crime that strikes at the heart of society's sense of personal safety and the right to quiet enjoyment of one's home. Mora also followed Danielle as she tried to enter her car, where Mora physically assaulted her, an assault that potentially would have caused more serious injury to Danielle had Joseph not accompanied her to the car after Mora's knocking and kicking at the door scared her. Mora also threatened to kill Joseph. Mora then returned to the residence with a baseball bat. This collective conduct is more than sufficient to deem Mora a danger to society.

Turning to the second factor, the nature of the offender, we find nothing in Mora's personal history supporting his contention that his sentence was cruel and unusual. Mora has a lengthy history of offenses going back three decades. In fact, the only significant breaks in Mora's criminal history occurred when he was incarcerated. At the time he committed the crimes before us,

---

[12] The other two prongs are "to compare the challenged penalty with the punishments prescribed in the *same jurisdiction* for *different offenses* which, by the same test, must be deemed more serious" and "a comparison of the challenged penalty with the punishments prescribed for the *same offense* in *other jurisdictions* having an identical or similar constitutional provision." (*In re Lynch, supra*, 8 Cal.3d at pp. 426, 427).)

Mora was on probation for three separate offenses. This supports the trial court's expressed finding that continued leniency would serve no purpose other than to make it possible for Mora to commit more crimes.

Mora's constitutional challenge to his sentence relies heavily on *People v. Avila* (2020) 57 Cal.App.5th 1134 (*Avila*). Given the fact-specific nature of a constitutional challenge to the length of a sentence (*People v. Dillon* (1983) 34 Cal.3d 441, 479 [court must consider "the totality of the circumstances surrounding the commission of the offense"]), *Avila* is only apposite to the extent the crime at issue, and the offender's personal characteristics and criminal background, resemble those of Mora. Those similarities are almost entirely absent.

The offender in *Avila* was convicted of attempted robbery and attempted extortion after he tried to collect "rent" from roadside fruit vendors. He neither committed violence nor threatened his victims and, as the court observed, the only damage was that oranges worth $20 were crushed. (*Avila, supra,* 57 Cal.App.5th at p. 1147.) Nonetheless, the trial court sentenced him to life in prison based upon two prior strike offenses committed 26 and 28 years previously, when he was a juvenile. (*Id.* at p. 1142.) The Court of Appeal reversed, finding that the trial court had abused its discretion: "[A]n abuse of discretion may be found where a trial court considers impermissible factors, and, conversely, does not consider relevant ones. [Citation.] [¶] That is precisely what occurred here. The trial court did not consider factors relevant to the nature and circumstances of Avila's prior strikes." (*Id.* at p. 1141.) The Court of Appeal found, inter alia, that the trial court had not afforded due weight to the fact that Avila's prior strikes were both decades old and

20

committed when he was a juvenile, and had inaccurately sentenced Avila as a violent offender. It had also erred by treating Avila as a habitual criminal, finding that "Avila is not comparable to the defendant who has led a continuous life of crime so as to counteract the extreme remoteness of his priors." (*Id*. at p. 1143.) Finally, the trial court's life sentence improperly focused on the potential for violence, not supported by the evidence at trial. "Sentencing is not the proper venue for the trial court's imagination." (*Id*. at p. 1142.)

From the foregoing, it is obvious that there are significant factual differences underlying Mora's sentencing that were absent in Avila's case. Foremost among them is the different exercise of the trial court's discretion: here, for example, the trial court did strike Mora's prior strike for a murder committed when he was a juvenile. Nor did the trial judge engage in speculation about the potential for violence in arriving at Mora's sentence. He indicated that he would give no weight to the fact that Mora had at one point returned with a baseball bat, but properly considered other factors, including Mora's threat to kill Joseph and the assault on Danielle. The two offenders' criminal histories are sharply different as well: unlike Avila, Mora can accurately be described as a career criminal. Finally, there is the difference between the sentence struck down in *Avila* and the one that Mora received. Mora's 18-year sentence is simply not comparable to the life sentence at issue in *Avila*.

We have already discussed—and rejected—the argument that the trial court should have given more weight in mitigation to the possibility that Mora's conduct was caused in some part by mental illness or incapacity. We cannot ignore the many factors in aggravation, particularly the verbal threat to kill Joseph. No

fair analysis of Mora's culpability allows us to ignore the significance of his real and threatened actions on the day in question. Just as the lack of a criminal record is not determinative in a cruel and unusual punishment analysis (*People v. Martinez* (1999) 76 Cal.App.4th 489, 497), it is not an abuse of discretion to consider a criminal record as extensive as Mora's record. Put another way, "[t]he facts of the crime as committed in this case and the particular nature of the offender who committed that crime [citation] prevent us from taking a benign or sympathetic view of [Mora's] culpability." (*People v. Munoz* (1984) 157 Cal.App.3d 999, 1015.)

## E.    Mora is Not Entitled to be Resentenced

The final issue we address is Mora's contention, raised in a supplemental brief, that his sentence must be set aside and the matter remanded for resentencing consistent with the amendments to section 1170 that became effective on January 1, 2022, and applicable to all judgments not yet final on that date.

At the time Mora was sentenced, former section 1170, subdivision (b) afforded trial courts wide discretion to sentence convicted offenders to the low, middle or high term of sentence prescribed by law. (See former § 1170, subd. (b); Stats. 2018, ch. 1001, § 2.) Effective January 1, 2022, Senate Bill No. 567 (2021-2022 Reg. Sess.) amended section 1170, subdivision (b), in a number of respects, including making the middle term of imprisonment the presumptive sentence. (§ 1170, subd. (b)(2).) As amended, the statute provides that "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term, except as otherwise provided in paragraph (2)." (§ 1170, subd. (b)(1).)

22

Paragraph (2) of subdivision (b) provides the exceptions that allow a judge to select the upper term of imprisonment "when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (*Id.*, subd. (b)(2).) Finally, paragraph (3) of subdivision (b) provides that the sentencing judge "may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury." (*Id.*, subd. (b)(3).)

Before imposing sentence, the trial court held a court trial on Mora's prior convictions, and admitted into evidence two exhibits offered by the prosecution: a 17-page certified "CLETS printout" of Mora's criminal record and a 17-page certified copy of the Department of Corrections file on Mora pursuant to section 969b. After reviewing these exhibits and hearing argument, the trial court sentenced Mora to the high term—six years in state prison—upon his conviction for first degree burglary. As the court explained, "This is based upon the fact that [Mora] was on probation in three different matters when this crime occurred as well as his record and the fact that [his] priors were of an increasing violent nature."

Mora now argues that the trial court had no basis on which to impose a sentence higher than the middle term of imprisonment for burglary. Specifically, Mora argues none of the factors the trial court relied on to impose the upper term "[was] stipulated to by [Mora] or found true beyond a reasonable doubt by the court or jury." In addition, Mora argues that a prior

23

conviction can only be proved by a "certified record," and no such record was before the trial court.

We agree that Mora is entitled to the benefit of the recent amendments to section 1170, subdivision (b) added by Senate Bill No. 567. Those amendments apply to all sentences not final as of January 1, 2022. On that date Mora's sentence was not final because this appeal was pending, and thus his request that we review the applicability of Senate Bill No. 567 to his sentence is a proper one. We thus address whether the trial court had evidence of aggravating factors that satisfies the requirements of subdivision (b)(2) or (3) of section 1170, and if it did not, whether the resulting error is harmless such that no remand for resentencing is necessary. For the reasons set out below, we find the record before the trial court qualified under section 1170, subdivision (b)(3) and alternatively that there was no prejudicial error if it did not. Therefore, we decline to remand for resentencing.

We have independently reviewed the two exhibits admitted into evidence at Mora's sentencing hearing, and we conclude that the trial court had, at the time of sentencing, "a certified record of conviction" within the meaning of section 1170, subdivision (b)(3). The CLETS report and the Department of Corrections records were both "certified records" showing Mora's criminal history, and were a sufficient evidentiary basis for the court to find two of the aggravating factors it relied on to sentence Mora to the upper term: Mora's "record," which we take to mean his prior criminal history, as well as the fact that he was on probation for three separate offenses at the time he committed his current offense. (See *People v. Dunn* (2022) 81 Cal.App.5th 394, 403-404 ["certified copy of [the] defendant's criminal history report"

24

admitted into evidence at sentencing hearing "meets the requirements of [§] 1170, [subd.] (b)(3)"].)

Even assuming, arguendo, that the certified records introduced at Mora's sentencing hearing would not qualify as "a certified record of conviction" within the meaning of section 1170, subdivision (b)(3), we conclude any error in relying on them would have been harmless.

The question of whether it is harmless error to sentence a defendant to the upper term based on aggravating factors not proved beyond a reasonable doubt by a jury or a court trial, stipulated to by the defendant, or proved with "a certified record of conviction," is one that has been addressed by a number of courts following the effective date of Senate Bill No. 567. Frequently cited on this issue are *People v. Flores* (2022) 75 Cal.App.5th 495 and *People v. Lopez* (2022) 78 Cal.App.5th 459. The trial court in *Flores* imposed the upper term based on aggravating factors similar to Mora's: Flores had numerous prior convictions dating back to when he was a juvenile, he was on probation when the crime was committed, and his prior performance on probation was unsatisfactory. Although the aggravating factors were not proved beyond a reasonable doubt, the Court of Appeal found the error was harmless. " '[I]f a reviewing court concludes, beyond a reasonable doubt, that the jury, applying the beyond-a-reasonable-doubt standard, unquestionably would have found true at least a single aggravating circumstance had it been submitted to the jury,' the error is harmless." (*People v. Flores, supra*, at p. 500, quoting *People v. Sandoval* (2007) 41 Cal.4th 825, 839.)

*People v. Lopez, supra*, 78 Cal.App.5th 459 reached the opposite conclusion to *Flores*, holding that it was not harmless

25

error for the trial court to find the existence of aggravating factors other than as provided in section 1170, subdivision (b). Lopez held that the relevant inquiry was not whether the trial court could have found at least one aggravating factor beyond a reasonable doubt. Instead, the relevant inquiry was whether the trial court "*would have exercised its discretion to impose the upper term* based on a single permissible aggravating factor, or even two or three permissible aggravating factors, related to the defendant's prior convictions, when the court originally relied on both permissible and impermissible factors in selecting the upper term." (*People v. Lopez*, *supra*, at p. 467.) The court held that Lopez was entitled to be resentenced because "[t]he trial court offered no indication that it would have selected an upper term sentence even if only a single aggravating factor or some subset of permissible factors were present." (*Id.* at p. 468.)

More recently, the Fifth District applied a different test to find harmless error in *People v. Dunn*, *supra*, 81 Cal.App.5th 394. *Dunn* reviewed the *Flores* and *Lopez* cases and concluded that "*Flores* sets too low a standard for harmlessness and *Lopez* too high." (*People v. Dunn*, *supra*, at p. 409.) *Dunn* adopted a test it described as a modification of *Lopez*: "The reviewing court determines (1)(a) beyond a reasonable doubt whether the jury would have found one aggravating circumstance true beyond a reasonable doubt and (1)(b) whether there is a reasonable probability that the jury would have found any remaining aggravating circumstance(s) true beyond a reasonable doubt. If all aggravating circumstances relied upon by the trial court would have been proved to the respective standards, any error was harmless. If not, the reviewing court moves to the second step of *Lopez*, (2) whether there is a reasonable probability that

26

the trial court would have imposed a sentence other then the upper term in light of the aggravating circumstances provable from the record as determined in the prior steps. If the answer is no, the error was harmless. If the answer is yes, the reviewing court vacates the sentence and remand for resentencing consistent with section 1170, subdivision (b)." (*People v. Dunn, supra*, at pp. 409-410, fn. omitted.)

We agree with *Dunn* that the harmless error test does not require us to conclude that a jury would have found, beyond a reasonable doubt, every aggravating factor that the trial court cited in sentencing Mora. We also believe that a hypothetical jury would have found true, beyond a reasonable doubt, the following aggravating factors, that Mora "was on probation in three different matters when this crime occurred," and had a lengthy history of criminal behavior. In reaching this conclusion we note that the record supporting the aggravating factors of Mora being on probation in three separate matters at the time of his current crime and the dates and substance of his prior arrests and convictions, is contained in documents our courts have recognized as accurate and reliable. "[T]he circumstance of a prior prison term or of probation or parole status ordinarily is well documented in the same type of official records used to establish the fact and nature of a prior conviction—court records, prison records, or criminal history records maintained by law enforcement agencies." (*People v. Towne* (2008) 44 Cal.4th 63, 81, fns. omitted.) The records before the trial court when it sentenced Mora—in particular, the certified copy of his criminal record—are the types of records referred to in *Towne* as accurate and reliable for sentencing purposes.

As to the final aggravating factor relied on by the trial court, while we may question whether the record supports a finding that Mora's numerous crimes were of an "increasingly violent" nature, there is no reasonable probability that the trial court would have sentenced Mora differently, based solely on considering the other two aggravating factors that we have concluded are supported by the record.[13]  Therefore, under the harmless error test as applied in either *Flores* or *Dunn*, we are satisfied that, even if the "certified criminal records" admitted at Mora's sentencing are not those contemplated in section 1170, subdivision (b)(3), they are nonetheless sufficiently reliable for the trial court to reach the conclusions it did, and that a jury would have reached the same conclusions had it considered that evidence.

A single aggravating factor can support the trial court's exercise of discretion to impose a sentence longer than the middle term.  (*People v. Black* (2007) 41 Cal.4th 799, 817; *People v. Hicks*

---

[13] In 2012, Mora was convicted of robbery, a violent felony, and sentenced to a term in state prison.  Following his release from state prison, and not including his present crimes, Mora was arrested on six occasions.  Following those arrests Mora was charged with offenses including attempted burglary (once), battery (once), domestic battery (once) and elder/dependent abuse (twice).  However, he was convicted only of misdemeanors in the following order: domestic battery, vandalism, possession of a controlled substance, shoplifting, battery, and elder/dependent abuse.  Mora's longest sentence for any of these crimes was 90 days in county jail.  Mora's crimes are numerous, which is itself an aggravating factor, but the characterization of his misdemeanor convictions between 2012 and his current offense as "increasingly violent" is questionable.

(2017) 17 Cal.App.5th 496, 512-513.) Mora's history includes *all* of the aggravating factors enumerated in rule 4.421(b) of the California Rules of Court: "(1) The defendant has engaged in violent conduct that indicates a serious danger to society; [¶] (2) The defendant's prior convictions as an adult or sustained petitions in juvenile delinquency proceedings are numerous or of increasing seriousness[14]; [¶] (3) The defendant has served a prior term in prison or county jail under section 1170[, subdivision] (h); [¶] (4) The defendant was on probation, mandatory supervision, postrelease community supervision, or parole when the crime was committed; and [¶] (5) The defendant's prior performance on probation, mandatory supervision, postrelease community supervision, or parole was unsatisfactory." The findings pertaining to Mora—his history of violence, his numerous prior offenses, his prior state prison sentence, and his probationary status at the time of the current crimes—are not subjective and they are demonstrable in records on which courts rely for the facts underlying these factors in aggravation of a sentence. Thus, the trial court would have reached the same conclusion on sentencing as long as at least one of the aggravating factors under California Rules of Court, rule 4.421(b) were found by a jury. Any error thus was harmless.

Our conclusion is consistent with the holding of Division Six of this court in *People v. Salazar* (2022) 80 Cal.App.5th 453.

---

[14] While, as noted, *ante* (see fn. 13), it may be arguable whether Mora's crimes between 2012 and the present can be characterized as demonstrating "increase[ed] seriousness," they certainly meet the alternative standard of "numerous[ness]" within the meaning of rule 4.124(b)(2) of the California Rules of Court.

The appellant in *Salazar* sought resentencing under Senate Bill No. 567 on the ground that, inter alia, the trial court lacked a certified record of convictions at the time of sentencing. Affirming, the court held that any error was harmless because the record "clearly indicated" that the trial court would not have imposed a lower term even if it had been aware of its discretion to do so under Senate Bill No. 567. The court pointed to many of the factors we have already discussed. For example, the trial judge in *Salazar*, like the judge who sentenced Mora, denied a *Romero* motion. The appellate court found that "[i]n denying the *Romero* motion, the trial court necessarily found that [Mora] was not outside the spirit of the Three Strikes law and continued to pose a danger to the public." (*People v. Salazar*, *supra*, at p. 463.) The trial judge in *Salazar*, like the judge here, ordered sentences to run consecutively rather than concurrently, which the appellate court found "shows the court's reluctance to impose the lower term." (*Ibid.*) There are other similarities as well, particularly an emphasis by the trial courts in both cases on the respective defendants' continuing criminal histories and continuing to commit crimes even while on probation or community supervision. Like our colleagues in *Salazar*, we conclude the trial judge would not have imposed a lower sentence on Mora even if he had been aware of his discretion to do so under Senate Bill No. 567 and had concluded that the records upon which he had relied did not qualify as "certified records of conviction."

## DISPOSITION

Mora's conviction and sentence, including the term of imprisonment and the fees and costs imposed, are affirmed.

NOT TO BE PUBLISHED


                                        KELLEY, J.*


We concur:



CHANEY, J.



BENDIX, Acting P. J.

---

\* Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.